LOTTINGER, Judge.
In this suit the plaintiff, Mrs. Grace Lee Neal, seeks to recover the sum of $1,500 allegedly due her as beneficiary under a ■coupon policy of life insurance issued by .the defendant to her son, Steve Neal, Jr. The defendant first filed exceptions to the jurisdiction of the court rationae personae and rationae materiae. These were overruled by the lower court and the defendant then answered. Later the defendant filed exceptions of no right and no cause of action, which were apparently referred to the merits. After full trial on the merits the lower court rendered judgment in favor of the defendant. The case is now before us on a devolutive appeal taken by the plaintiff.
The evidence shows that on October 12, 1948, Steve Neal, Jr., while on duty with the United States Army at Camp Leroy Johnson, New Orleans, Louisiana, made an application for a policy of life insurance with the defendant company. At the same time he 'applied to the appropriate Army officials for what is known as a “Class ‘E’ Allotment”, or payroll deduction, in the amount of $8.25 per month, which amount was to be paid monthly by the Army to the defendant company. It was alleged (but no proof was introduced to that effect) that Steve Neal, Jr. died on June 26, 1949, while still in the United States Army at Camp' Leroy Johnson.
The exceptions to jurisdiction have not been urged on this appeal and we presume that they have been abandoned. The principal defense relied upon by the insurance company, both in the lower court and on this appeal, is that the premiums were never paid, and that consequently if the policy ever did become effective, it lapsed by the terms thereof because of nonpayment of the premiums. The plaintiff, on the other hand, seems to rely mainly on the fact that the defendant company sent the policy to her along with a form letter, signed by its president, which we here reproduce in full:
“November 19, 1948
“Mrs. Grace Lee
“Manderville
“Louisiana
“Dear Mrs. Lee:
“Your son has purchased from us one of the very best insurance contracts issued by any company and has authorized the premium deposits to be deducted from his *784 monthly pay by Government 'Class ‘E’ Allotment. He has made it payable to you as beneficiary, and, at his request, we are sending the policy to you to keep for him until he returns.
“By the acquisition of this contract he has added a definite sum to his estate which cannot be taken from him so long as his premium deposits are regularly made. In accepting these deposits, the Life Insurance Company of America becomes the guardian of his insurance interests — a trust which, I assure you, the company will always endeavor to merit. We stand ready at all times to render any service we are able to give him and shall be glad to hear from you concerning any matter affecting your own insurance problems.
“Very sincerely,
“/sd/ Hubert G. Foster
“Hubert G. Foster
“President
“HGF/jv”
The pertinent part of the policy itself relative to the payment of premiums is as follows:
“This policy is issued in consideration of the application therefor and the payment of a Government Allotment monthly premium of $8.25 on or before the effective date of this policy * *
“If any premium or installment thereof or premium note is not paid on or before the date when due, the liability of the company hereunder shall thereupon automatically cease, except as otherwise provided herein.”
Without going into unnecessary detail, we find it sufficient to state that the record conclusively shows that no premiums were ever paid. The effective date of the policy was, according to the face of the policy itself, December 1, 1948. However, according to the testimony of Mr. Hubert G. Foster, president of the defendant company no premium, or any money whatsoever, was ever received by his- company from the Army. Likewise, according to the testimony of Lt. Col. Sylvan Wiener, Chief of the Class “E” Allotment Division of the Army Finance Center at St. Louis, Missouri, no monies were ever deducted from the pay of Steve Neal, Jr. and paid to the defendant company.
Counsel for plaintiff places great emphasis on the observation of Lt. Col. Wiener to the effect that if an error was made in such a payroll deduction and later corrected that it would then make the said insurance policy retroactive from the date of its original issuance. ÍWe are of the opinion that this testimony constitutes a mere legal conclusion on the part of the witness, but aside from this the record does not show that the matter was ever straightened out prior to Steve Neal, Jr.’s death and consequently we feel that it adds nothing to the case whatsoever.
Counsel for plaintiff contends further, on this appeal, that the defendant as a result of sending the plaintiff the policy and the form letter' quoted above, is now estopped to raise the question of payment of' premiums. The answer to this' is that even if this were to constitute a waiver or estoppel, it cannot now be raised as it: was not specially pleaded.' See Young v. New Orleans Public Service, Inc., La.App., 35 So.2d 881.
While we sympathize with the plaintiff’s plight we are unable to assist her due to the fact that the plain terms of the-policy were never complied with, and due-to the fact that no premiums were paid, it is our opinion that a contract of insurance-never came into existence. We find the rule in Coci v. New York Life Insurance Co., 155 La. 1060, 99 So. 871, 873, to be as follows: “There can be no doubt of the correctness of the rule that where the-contract is to be completed in this- state by delivery of the policy on payment of the-premium the contract is to be regarded as-, a Louisiana contract, and the insurance is.not effective until the premium is paid.”’ (Italics ours.)
For the reasons assigned the judgment-, appealed from is affirmed.
Judgment affirmed.